UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LISA VASQUEZ, On Behalf of Her Infant DAUGHTER, J.V.

                        Plaintiff,

-against-

SUCCESS ACADEMY CHARTER SCHOOLS, INC.; SUCCESS ACADEMY CHARTER SCHOOL PROSPECT HEIGHTS; SUCCESS ACADEMY BOARD OF TRUSTEES SAMUEL A. COLE, BRYAN BINDER, SCOTT FRIEDMAN, GREGORY SAWERS, EDWIN CESPEDES, DERRELL BRADFORD, BRIAN LEVINE, SULEMAN LUNAT, JARETT POSNER, LORENZO SMITH III, and ANDREW D. STONE; CHIEF EXECUTIVE OFFICER EVA MOSKOWITZ; SYDNEY CHERNOFF-SOLOMON; JOHN DOE ##1-4,

                        Defendants.

------------------------------------------------------------------------ X

COMPLAINT AND JURY DEMAND

Docket No.

ECF CASE

## PRELIMINARY STATEMENT

1. As a charter school network that receives state and public funding, Success Academy Charter Schools ("Success Network" or "the Network") must allow children with special needs to attend its schools. Success Network states on its website that admission is open to all New York State Children, "including those with special needs and English Language Learners", as they must by law.

2. Once admitted, however, children with disabilities and special needs and their parents get singled out for harassment and discrimination.

3. After the investigation of complaints made against the Success Network, the State Department of Education ("SDOE") found that Success Academy fails to meet legal

1

requirements designed to serve and protect the interests of children with disabilities. Notably, the SDOE found that Success Academy had simply refused legal orders requiring that a student "stay put" at the school, and removed or refused to allow the return of the student in direct contravention of law. *See* Exhibit A.

4. Moreover, as a pattern and practice the Network retaliates against whistleblower parents by releasing confidential information about their children in violation of the Families Education Rights and Privacy Act ("FERPA"). The United States Department of Education ruled that the Network had a pattern and practice of violating FERPA. *See* Exhibit B.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 28 USC §1331, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a) and 42 USC §§1983 and 1988. Supplemental jurisdiction is asserted over claims under state and local laws.

6. Venue is laid within the United States District Court for the Eastern District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

7. Lisa Vasquez is a resident of Staten Island in the City and State of New York. She is the Mother and Legal Guardian of J.V.

8. Plaintiff J.V. was at all times here relevant a student at Success Academy PROSPECT HEIGHTS ("SA-PH"). She is a resident of Staten Island in the City and State of New York. J.V. is and at all times here relevant diagnosed with Adjustment Disorder ("AD"), Anxiety, and Post-Traumatic Stress Disorder ("PTSD").

9. Defendant Success Academy Charter Schools, Inc. ("Success Academy") is a non-profit corporation organized under the laws of the State of Delaware. Success Academy's headquarters are located in New York, New York. Success Academy administers 47 schools in the City of New York. It received direct funding from the federal government and the State of New York, and resources from the City of New York.

10. Defendant Success Academy Prospect Heights ("SA-PH") is a charter school located in the Prospect Heights neighborhood of Brooklyn and is wholly controlled and operated by Success Academy.

11. Defendant Sydney Chernoff-Solomon was at all times here relevant an employee of Success Academy and the principal of SA-PH. All of the actions taken by SA-PH that form the basis of this lawsuit were taken with her knowledge and at her behest.

12. Defendant Board of Trustees Samuel A. Cole, Bryan Binder, Scott Friedman, Gregory R. Sawers, Edwin Cespedes, Derrell Bradford, Brian Levine Suleman Lunat, Jarrett Posner, Lorenzo Smith III and Andrew Stone (collectively "the Board of Trustees") were members of the Success Academy Board of Trustees. Under N.Y. Education Law § 2853(f), the Board of Trustees has final policy making authority for Success Academy and its schools within the network.

13. Defendant Eva Moskowitz is the Chief Executive Officer of Success Academy and has decision making authority for Success Academy.

14. All defendants acted under color of state laws and within the scope of their employment.

## FACTUAL ALLEGATIONS

15.     Success Academy schools are public charter schools.  As such, like public schools they are required to admit students regardless of their disability.

16.     Unfortunately, Success Academy has a track record of targeting students for removal from their schools based on disabilities.

17.     SA-PH and Principal Sydney Chernoff were aware of J.V.'s disability but would not accommodate her disability consistent with federal law.  To the contrary, SA-HP instead engaged in a sustained campaign to harass J.V. and his mother with the purpose of driving J.V. out of the school because of her disability.

18.     Prior to attending SA-PH, J.V. was diagnosed with ADD and PTSD.  Also prior to attending SA-PH, she was put on an Individualized Education Program ("IEP"), which are often given to students with disabilities.  These facts about J.V. were known to Success Academy and SA-PH when she started at the school.

19.     J.V. started at the school in First Grade.  Ms. Vasquez and J.V. believed that her experience at the school was going well.  J.V. made friends and appeared to be happy.

20.     Two to three weeks after the start of school however, Defendant Principal Chernoff called Ms. Vasquez to inform her that J.V. would be removed from her First Grade class and put into Kindergarten.

21.     Principal Chernoff explained that the school conducted an "internal assessment" and determined that J.V. would be "better off" in Kindergarten.  Ms. Vasquez asked for information about the "internal assessment but was told, incredibly, that the school could not share it with her, that it was private to the school.

22. When Ms. Vasquez asked if she could come to the school to discuss further, Principal Chernoff agreed but stated further that there was no way to change the outcome, J.V. was being forced into Kindergarten the next day.

23. Ms. Vasquez went to the school the following day. She explained to Defendant Chernoff and another SA official present that moving her to kindergarten would injure her educationally and have adverse consequences for her disability. She again asked for the "internal assessment." Chernoff repeated that the assessment is private to the school and could not be shared with her. She did not explain and only reiterated that she had no choice but to accept it. When Ms. Vasquez asked if the decision could be challenged, Defendant Chernoff replied negatively and further stated that J.V. could quit the school.

24. Ms. Vasquez understood the conversation to mean that the school wanted J.V. to leave. Success Academy has been accused by many parents and public officials of "counseling out" students with disabilities. (*See* Second cause of Action *infra*.)

25. Ms. Vasquez determined that weeks into the school year it would be too disruptive for J.V. to leave a school and start trying to find another one. She is an IEP student and it is not as simple as just enrolling her in a locally zoned school. She let J.V. stay at the school in Kindergarten.

26. J.V.'s education and mental health deteriorated in Kindergarten. The situation quickly went downhill for J.V. and her mother.

27. The phone calls from school started immediately. The school complained that J.V. would not keep her mouth in the bubble position; that she would not sit in the "Success" position; and that she would sometimes stray from walking in single file. They claimed that it was dangerous for other students when J.V. did not stay precisely in the single file.

28. SA-PH applied these rules to J.V. knowing that they posed great difficulty to her due to her disabilities. SA-PH also knew that J.V. was diagnosed with having low tone in her facial muscles, making the mouth "bubble" very difficult for her.

29. Over the course of the school year, SA-PH contacted Ms. Vasquez approximately 30 times to come pick up J.V. from school because of the alleged "misbehavior". They also would sometimes put J.V. on the phone with her mother in front of other people and require Ms. Vasquez to tell J.V. 'how to behave', causing J.V. to feel publicly shamed. T

30. They would also punish J.V. by making her stand for long periods of time. Other times they would force her to stare at the wall of the back of the classroom for periods of time.

31. Ms. Vasquez was asking repeatedly for an IEP meeting with the hope it would better help the school understand J.V.'s condition. Each time they would give her the run around.

32. On one occasion, Ms. Vasquez was unable to go to the school on Ms. Chernoff's command. Ms. Vasquez had another child at home who needed special attention as well. Ms. Chernoff claimed that Ms. Vasquez was being neglectful and threatened to report her to the Administration for Children's Services ("ACS") for child endangerment.

33. J.V. was also banned from speaking to any of the children whom she had met in her First Grade class. A mother of a friend that J.V. made in her First Grade class told Ms. Vasquez that Defendant Principal Chernoff did not allow her child to speak to J.V. because of the ban. This was another devastating blow to J.V. When Ms. Vasquez asked Chernoff about it, she was told that J.V. just needs to focus on her studies.

34. On another occasion, the school called Ms. Vasquez to tell her that J.V.'s hair needed to be put up and that she was not presentable. The school had had a professional photographer come into the school to take a photograph for the school's Facebook page. The school official demanded that Ms. Vasquez tell the child to put her hair up.

35. Much of the above communications with Ms. Vasquez and disciplinary actions were being taken as Ms. Vasquez was repeatedly requesting an IEP meeting.

36. Finally, Ms. Vasquez got the requested IEP meeting on October 31. The usual people one would expect to find at such a meeting were there; the social worker, the school psychologist, the Committee on Special Education ("CSE") coordinator, J.V.'s counselor, and of course Ms. Vasquez. Also attending was a lawyer from SA with another on speakerphone. Lawyers representing the school are not a part of the IEP process.

37. It became crystal clear to Ms. Vasquez that they did not want to help J.V., they wanted Ms. Vasquez to give up and pull her out of the school.

38. Ms. Vasquez, the Social worker and the CSE coordinator objected to the presence of the SA lawyers. But SA would not participate without them so they went forward.

39. Two more IEP meetings were held in the next two weeks. J.V. was deteriorating badly because of SA-PH's continued harassment and abuse and discriminating against her because of her disability.

40. Finally, due to the defendants' campaign of harassment and discrimination against her and her daughter, Ms. Vasquez removed J.V. from the school on November 19.

## **DAMAGES**

41. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Severe Emotional Distress;

   b. Loss of educational opportunity;

   c. Medical expenses;

   d. Attorneys' fees and costs.

## **FIRST CAUSE OF ACTION – DISCRIMINATION AGAINST J.V.**
(42 USC § 1983 – Violation of § 504 by Discriminating Against J.V. as to Success Network, SA-PH and Sydney Chernoff)

42. The above paragraphs are here incorporated by reference.

43. J.V. is diagnosed with AD and PTSD, disabilities that substantially limits one or more major life activities. She is therefore an "individual with a disability" under §504 of the Rehabilitation Act of 1973.

44. J.V. is "otherwise qualified" to attend a school within the Success Network, including SA-PH, within the meaning of §504 of the Rehabilitation Act of 1973.

45. He has been "excluded from benefits" solely due to his disability within the meaning of §504 of the Rehabilitation Act of 1973.

46. Success Network and SA-PH each receive federal funding, making them subject to §504 of the Rehabilitation Act of 1973.

47. Defendants Success Network, SA-PH and Sydney Chernoff failed to make reasonable accommodations for J.V. and discriminated against him as described in the factual allegations above.

48. The defendants' willful and intentional discriminatory acts taken against J.V. and

his mother violates §504 of the Rehabilitation Act of 1973.

49. Plaintiff was injured as a result of defendants' wrongful acts.

**SECOND CAUSE OF ACTION—MUNICIPAL AND SUPERVISORY LIABILITY**
(42 U.S.C. § 1983- Municipal and Supervisory Liability as to Success Network, the Board of Trustees, and Eva Moskowitz)

50. The above paragraphs are here incorporated by reference.

51. Pursuant to N.Y. Education Law § 2853(f), the Board of Trustees of a Charter School has final policy making authority for the charter schools under its jurisdiction.

52. Under the above referenced law, the Board of Trustees of a Charter School can also delegate certain decision making authority to employees. Upon information and belief, the Success Academy Board of Trustees delegates certain decision making authority to CEO Eva Moskowitz.

53. The allegations of illegal treatment of students with disabilities is well known to all the Board of Trustees, CEO Eva Moskowitz, and Success Academy. In 2015, New York City Schools Chancellor Carmen Farina explained that comparing a non-charter public school to a Success Academy school in test scores was comparing apples to oranges because we keep all our kids from the day they walk into the building."[1]

54. The 2014-2015 Success Academy Family Handbook, which is introduced by CEO Eva Moskowitz, explains its "zero tolerance approach" when it comes to discipline. In a Complaint filed with the United States Department of Education Office of Civil Rights, 14 complainants with disabilities who were Success Academy students, joined by the Public Advocate of the City of New York and the Chair of the Committee on

---

[1] https://www.nytimes.com/2015/04/07/nyregion/at-success-academy-charter-schools-polarizing-methods-and-superior-results.html

Education of the Council of the City of New York, alleged that the inflexible zero tolerance approach amounts to discrimination against children with disabilities.  The rigid rules and the practice of "counseling out" students with disabilities from the Success Academy network amounted to discrimination.[2]  The Office of Civil Rights vowed to investigate.[3]

55.     Defendants further are aware and established a policy of ignoring lawful orders of impartial hearing officers to reinstate students with disabilities who had been suspended from school.  During the 2017-2018 school year, in house lawyers for Success Academy directed parents that their children who were ordered back to school were still suspended and were prohibited from school.  This was clearly Success Academy policy.

56.     The allegations made in the preceding paragraphs, among others involving the mistreatment of students with disabilities, were the subject of a complaint filed with the State Education Department.  All the allegations were substantiated.

57.     The named defendants knew and in fact established a policy and practice that students with disabilities were discriminated against by not making reasonable accommodations for them, that they were suspended repeatedly in violation of law, were pushed out of the school through harassment.  Nevertheless, they failed and continue to fail to take corrective actions to stop the discrimination in their schools.

58.     Furthermore, when the parents of children with disabilities blow the whistle on the treatment of their children at Success Academy Schools, The Network and its

---

[2] The Complaint can be found here:
https://images.law.com/contrib/content/uploads/documents/389/39711/a_and_parent_of_a_et_al._1-20-16.pdf
[3] https://www.nydailynews.com/new-york/education/nyc-charter-school-probed-alleged-bias-disabled-kids-article-1.2634057

employees retaliate by releasing private, protected information of the children in violation of FERPA.

59. FERPA requires educational institutions such as the Success Network to protect the privacy of students. It prohibits them from having a pattern or practice of releasing such information.

60. Yet, the Success Network flouts FERPA by having adopted a pattern and/or practice of disclosing such information. After a parent spoke to a reporter from the PBS NewsHour about her child's negative experience at Success Academy, the Network released private and protected information not only to the reporter on the story, they published the information about the child on their own web site. Incredibly, defendant Moskowitz again disclosed information about the child -- procured in her position as an official of the Success Network -- in her memoir published by HarperCollins.

61. In defending the complaint made to the U.S. Department of Education about the release of the child's information, the Success Network argued that since a parent had made "false accusations" against the Success Network and "defamed" it on the PBS News Hour, they in turn were entitled to release private information about the former student otherwise protected by FERPA.

62. This absurd and toxic legal argument was rejected by the Department of Education, and they were adjudged to have violated FERPA.

63. Such retaliatory disclosures serve to cover-up the wrong-doings of the Success Network against children with disabilities and enable its teachers, administrators and employees to engage in such unlawful conduct.

64. The above described policies and customs and failures to train, supervise, or

discipline demonstrated willful deliberate indifference on the part of these policymaking defendants and were the cause of the violations of Plaintiff's damages and are liable to plaintiff under §1983.

65. Plaintiff was injured as a result of defendants' willful, intentional deliberate indifference.

WHEREFORE, Plaintiff demands judgment against the Defendants in favor of Plaintiff in an amount to be determined for each of Plaintiff's causes of action and granting such other and further relief as this Court deems just and proper

DATED: October 24, 2019
New York, New York

Respectfully yours,

S/ *Leo Glickman*

TO: Defendants

By: Leo Glickman
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
5030 Broadway, Ste. 652
New York, NY 10034
(718) 852-3710
(718) 852-3586
lglickman@stollglickman.com